IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1)   SUSANNE WEINBERGER, Ph.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. _____ |
| | ) | |
| (1)   STATE OF OKLAHOMA, ex rel., | ) | |
| THE BOARD OF REGENTS OF | ) | |
| OKLAHOMA AGRICULTURAL AND | ) | |
| MECHANICAL COLLEGES, | ) | |
| a constitutional state agency, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Susanne Weinberger, Ph.D. ("Weinberger"), brings this action seeking redress for violations of rights guaranteed to her by the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., as amended ("Title VII"), and the Civil Rights Attorney's Fee Awards Act of 1976, 42 U.S.C. § 1988 ("1988"). For her claims against Defendant State of Oklahoma, ex rel., The Board of Oklahoma Agricultural and Mechanical Colleges, Weinberger alleges and states as follows:

### The Parties

1. Plaintiff is a Caucasian female who at all times herein mentioned did and now does reside in the City of Stillwater, Payne County, State of Oklahoma.

2. Defendant State of Oklahoma, ex rel., The Board of Regents of Oklahoma Agricultural and Mechanical Colleges, was at all times herein mentioned and now is a constitutional agency of the State of Oklahoma whose principal place of doing business is located in the City of Oklahoma City, Oklahoma County, State of Oklahoma, and among the Oklahoma public institutions of higher education that are governed by Defendant is Oklahoma State University located in

Stillwater, Payne County, State of Oklahoma.

## Jurisdiction and Venue

3.  Plaintiff invokes the jurisdiction of this Court pursuant to 42 U.S.C. §§ 2000e, et seq., as amended, specifically, 42 U.S.C. §§ 2000e-2(a) and 2000e-2(m); and, 28 U.S.C. § 1331.  As to Plaintiff's claim based upon a violation of state law, this Court has pendent and supplemental jurisdiction to determine that claim under 28 U.S.C. § 1367(a).

4.  Venue is proper in the Western District of Oklahoma pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391.

## Fact Allegations

5.  Plaintiff is a female and citizen of Austria who obtained her Ph.D. degree from Yale University after completing her undergraduate education in her country of origin, Austria.

6.  Plaintiff's academic discipline is archaeology, a subdiscipline of anthropology, with a speciality in European pre-history.

7.  In the Spring 2002, Defendant hired Plaintiff as an Assistant Professor in its Department of Sociology at OSU on a three-quarter (3/4) time basis.  Plaintiff's appointment was a tenure-track appointment effective September 1, 2002 to May 31, 2006.  A copy of the letter offer dated April 3, 2002 that was accepted by Plaintiff and approved by Defendant's administration and governing board is attached hereto as Exhibit "1" and incorporated herein by reference.

8.  At the time Plaintiff was hired by Defendant, Defendant made the decision to hire two (2) anthropology faculty when it recognized that it did not have appropriate funding to fund both positions as full-time positions.  Accordingly, in Exhibit "1" attached hereto and incorporated by reference, the offer letter further states: "As you know, we are going to do our best to increase this to a full-time position as soon as the present budgetary constraints abate."

9. Defendant also hired a male anthropologist, Stephen Perkins, in a full-time position at the time it hired Plaintiff in a 3/4-time position with the representation to Plaintiff that it would provide Plaintiff a full-time position when the present budgetary constraints abated.

10. Charles Edgley ("Edgley"), Ph.D., was the head of the Department of Sociology at the time Defendant employed Plaintiff and Edgley told Plaintiff at the outset of her appointment that if Plaintiff made reasonable progress on her scholarly book she was writing based on her Ph.D. dissertation, Plaintiff would be reappointed after her third year in the tenure track and that she would be tenured if her book was published or accepted for publication in that it can take a year or more until an accepted book manuscript is available in print.

11. Edgley evaluated Plaintiff's job performance as an Assistant Professor in all areas of her faculty evaluation as exceeding standards for reappointment for Plaintiff's first two (2) academic years in the tenure track.

12. On May 31, 2004, Edgley retired as head of the Department of Sociology and Patricia Bell ("Bell"), an African-American faculty member in Defendant's Department of Sociology, became the interim chair of that department.

13. Although Plaintiff had been told by an OSU Sociology colleague that Bell was out to get Plaintiff, Plaintiff discounted those comments because of Plaintiff's belief that Bell would be objective in her performance appraisals and treatment of Plaintiff and that Defendant's process for reappointment after the third year in the tenure track would be adhered to by Defendant.

14. During Bell's OSU employment, Bell has made discriminatory comments directed at foreign-born persons, that a Chinese faculty colleague had been impressed upon Bell by the former administration, that Bell admonished Chinese faculty member to not use examples from China to illustrate certain points in his classes, and further insinuated that the Austrian book publisher that

was publishing Plaintiff's scholarly work was a "vanity" press rather than a scholarly press.

15. Defendant did not have any published policy or criteria regarding the number or kind of publications that were requisite for reappointment of a faculty member in a tenure track to a second three year term.

16. The criteria for reappointment of an Assistant Professor are set forth in Defendant's Policy on Tenure and Promotion for the Department of Sociology which states: "An Assistant Professor should be reappointed only if he/she has the potential to be promoted at the second reappointment and only if the confidence in that potential seems significantly stronger than at initial appointment."

17. Plaintiff entered into a book contract with the Austrian Academy of Sciences comprised of ten (10) chapters, all of which are in draft.

18. Plaintiff anticipates that her scholarly book will be accepted for peer review in 2006 by the Austrian Academy of Sciences and the progress of Plaintiff's book was well known to Defendant. Upon positive reviews, it will e accepted for publication.

19. Defendant's established custom and practice has been to award tenure to faculty who succeed in having their scholarly works published as a book by a scholarly press.

20. Despite this established custom and practice, Defendant's new dean, Peter Sherwood ("Sherwood"), and its Sociology Chair, Bell, applied its tenure standard of publication to Plaintiff's reappointment to a second three-year term in the tenure track without any prior notice to Plaintiff that a higher and more difficult standard was being utilized and that the representations made to Plaintiff by Edgley would not be honored or applicable.

21. Once Bell became Chair of the Department of Sociology, Bell in 2004 evaluated Plaintiff as deficient in all three areas of her faculty performance, *i.e.*, teaching, research and

publications, and service, stripped Plaintiff of a graduate seminar that Plaintiff taught, constantly challenged Plaintiff in an intimidating manner, and determined that Plaintiff's efforts in writing her book were not comparable to other faculty who wrote journal articles in peer-reviewed journals.

22. In Academic Year 2004/2005, Plaintiff had not been provided a full-time faculty position although Defendant's financial position had improved and was capable of funding her position full-time, and Plaintiff made the request to Defendant that her position be full-time rather than 3/4-time.

23. Plaintiff met with Dean Sherwood in July 2004, and explained to Sherwood the representations that had been made to her related to a full-time position and directed his attention to her letter offer of employment dated April 3, 2002.

24. Although Sherwood represented to Plaintiff that he would investigate the matter, he was deliberately dilatory in taking any action and Plaintiff complained to Defendant's Faculty Council.

25. As a result of the action taken by Defendant's Faculty Council pursuant to Plaintiff's complaint, a decision was made to allow the Sociology faculty to vote on whether Plaintiff would be placed in a full-time position despite the fact a full-time position was part of Plaintiff's contract of employment with Defendant.

26. When Plaintiff discussed her full-time faculty appointment with Bell following Bell's appointment as interim chair of the Department of Sociology in 2004, Bell told Plaintiff that she did not want to make any long-term decisions and that faculty needed to be consulted although Bell knew of Plaintiff's letter offer that she accepted in 2002.

27. When Plaintiff complained to the Faculty Council about not receiving a full-time position when the financial situation of Defendant was such that it could fund that position,

Sherwood falsely claimed that Plaintiff was hired under irregular circumstances and that the irregularity was in and of itself a sufficient reason to dishonor the contract and refuse Plaintiff's full-time appointment.

28.     In September 2004, Bell sent Plaintiff a letter that stated, *inter alia*, "On behalf of the Department, College, and University, I thank you for the fine work you have done."  And, the letter further informed her that a salary increase was approved.  A copy of this September 10, 2004 letter is attached hereto as Exhibit "2" and incorporated by reference herein.

29.     Plaintiff's husband is also an OSU professor in its History Department and Plaintiff and her husband desired to have children.

30.     Plaintiff became pregnant and gave birth to their daughter in February 2004.  Her pregnancy and the birth of their daughter required Plaintiff to be on maternity leave for seven weeks.

31.     In September and October of 2004, Plaintiff brought her infant daughter to the Sociology Department on three different occasions to breast feed her daughter and to deliver her daughter to the babysitter once she had completed the breast-feeding.

32.     On each of the three occasions, the babysitter left the department quickly with her daughter and only returned after three hours because of the breast-feeding requirement.  During the intervening time, Plaintiff prepared and taught her morning classes.

33.     In October 2004, Bell told Plaintiff that three unnamed persons complained about her daughter being in the department for purposes of breast-feeding, and told Plaintiff to "not bring her child to the office anymore or ...".

34.     When Bell gave Plaintiff that directive, no rule or policy existed related to the presence of children and one of Plaintiff's male faculty colleagues brought his infant son to the department and continued to bring his infant son after Plaintiff was mandated by Bell not to bring

her daughter to the department.

35. In her letter recommending Plaintiff's non-reappointment, Bell wrote, *inter alia*, "Dr. Weinberger mentions personal events that have no place in this evaluation. The suggestion appears to be that the status of being a parent should in some way absolve her from her responsibilities and professional duties" and, "... The Department cannot be held responsible for personal reproductive decisions."

36. By letter dated January 17, 2005, Sherwood was notified by the personnel committee in the Department of Sociology that by a 4 to 1 vote, Plaintiff was denied reappointment as an Assistant Professor. The Minority Report was made a part of this report. A copy of this letter is attached hereto as Exhibit "3" and incorporated herein by reference.

37. As the minority report states, Plaintiff on the basis of her records, should have been reappointed.

38. Plaintiff was notified by Defendant that her employment with Defendant would end on May 31, 2006.

39. Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission, Charge No. 311-2006-0056, dated October 18, 2005, a true and correct copy of which is attached hereto as Exhibit "4" and incorporated herein by reference. And, by letter dated October 24, 2005, the EEOC issued its Dismissal – Notice of Right to Sue, a true and correct copy of which is attached hereto as Exhibit "5" and incorporated herein by reference.

### FIRST CLAIM – VIOLATION OF TITLE VII OF THE 1964 CIVIL RIGHTS ACT, AS AMENDED – SEX DISCRIMINATION

40. Plaintiff incorporates by reference Paragraphs 1 through 39 as though set forth in full herein.

41. Plaintiff's education, training, and OSU job performance that comported with announced reappointment expectations and standards, caused Plaintiff to be well-qualified for reappointment to a second 3-year tenure track term.

42. Plaintiff's gender was a significant factor in Defendant's decision to non-reappoint Plaintiff to a second 3-year tenure track term.

43. Defendant's reasons for non-reappointment are discriminatory, pretextual, sham, and Defendant has not and cannot state legitimate good faith reasons for its non-reappointment decision.

44. As a direct result of Defendant's discrimination as herein alleged, Plaintiff has suffered economic loss, mental anguish and emotional distress, injury to her professional reputation, humiliation, embarrassment, sleeplessness and depression, and loss of enjoyment of life, all to her damage in a sum in excess of Three Hundred Thousand Dollars ($300,000.00).

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

(1) That Defendant be ordered to make Plaintiff whole by providing back pay and any other remedy authorized by 42 U.S.C. § 2000e-5(g);

(2) That Defendant be ordered to pay Plaintiff compensatory damages pursuant to 42 U.S.C. § 1981a in an amount to be determined by the jury at the time of trial;

(3) That Defendant be ordered to pay Plaintiff costs including witness fees and a reasonable attorneys' fee pursuant to 42 U.S.C. § 2000e-5(k); and,

(4) For such other and further make-whole relief as the Court deems just and proper.

## SECOND CLAIM – VIOLATION OF TITLE VII OF THE 1964 CIVIL RIGHTS ACT, AS AMENDED – NATIONAL ORIGIN DISCRIMINATION

45. Plaintiff incorporates by reference Paragraphs 1 through 44 as though set forth in full herein.

46. Although Plaintiff is a permanent resident of the United States of America, she was born and raised in Austria and speaks English with an Austrian accent. Moreover, Plaintiff's academic area of interest is focused on early European Bronze Age in Central Europe and Austria, an academic speciality that has not been emphasized at OSU.

47. Plaintiff's national origin was a significant factor in Defendant's decision to non-reappoint Plaintiff to a second 3-year tenure track term.

48. As a direct result of Defendant's discrimination as herein alleged, Plaintiff has suffered economic loss, mental anguish and emotional distress, injury to her professional reputation, humiliation, embarrassment, sleeplessness and depression, and loss of enjoyment of life, all to her damage in a sum in excess of Three Hundred Thousand Dollars ($300,000.00).

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

(1) That Defendant be ordered to make Plaintiff whole by providing back pay and any other remedy authorized by 42 U.S.C. § 2000e-5(g);

(2) That Defendant be ordered to pay Plaintiff compensatory damages pursuant to 42 U.S.C. § 1981a in an amount to be determined by the jury at the time of trial;

(3) That Defendant be ordered to pay Plaintiff costs including witness fees and a reasonable attorneys' fee pursuant to 42 U.S.C. § 2000e-5(k); and,

(4)     For such other and further make-whole relief as the Court deems just and proper.

### THIRD CLAIM – VIOLATION OF TITLE VII OF THE 1964 CIVIL RIGHTS ACT, AS AMENDED – RETALIATION

49.     Plaintiff incorporates by reference Paragraphs 1 through 48 as though set forth in full herein.

50.     In February 2005, Bell attempted to prohibit Plaintiff's request for academic travel to Germany but was unsuccessful.

51.     Plaintiff filed in internal grievance on or about July 18, 2005 with Defendant that alleged, *inter alia*, both gender and national origin discrimination.   A copy of her grievance is attached hereto as Exhibit "6" and incorporated herein by reference.

52.     Shortly after Plaintiff filed her grievance with Defendant, Bell retaliated against Plaintiff by claiming that Plaintiff was not eligible for travel in Academic Year 2005-2006 when in fact faculty travel requests for academic purposes are routinely approved.

53.     Only when Plaintiff informed Defendant's Provost and Sherwood of the retaliation and that Plaintiff had reported this action of harassment to her attorney, did Bell sign Plaintiff's travel request.

54.     As a direct result of Defendant's discrimination as herein alleged, Plaintiff has suffered economic loss, mental anguish and emotional distress, injury to her professional reputation, humiliation, embarrassment, sleeplessness and depression, and loss of enjoyment of life, all to her damage in a sum in excess of Three Hundred Thousand Dollars ($300,000.00).

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

(1)     That Defendant be ordered to make Plaintiff whole by providing back

pay and any other remedy authorized by 42 U.S.C. § 2000e-5(g);

(2) That Defendant be ordered to pay Plaintiff compensatory damages pursuant to 42 U.S.C. § 1981a in an amount to be determined by the jury at the time of trial;

(3) That Defendant be ordered to pay Plaintiff costs including witness fees and a reasonable attorneys' fee pursuant to 42 U.S.C. § 2000e-5(k); and,

(4) For such other and further make-whole relief as the Court deems just and proper.

SUPPLEMENTAL STATE CLAIM FOR BREACH OF CONTRACT

55. Plaintiff incorporates by reference Paragraphs 1 through 54 as though set forth in full herein.

56. By letter dated April 3, 2002, Exhibit "1" hereto, Defendant offered Plaintiff a position as a 3/4-time Assistant Professor in its Department of Sociology.

57. Plaintiff accepted the position, commenced to perform and did perform all the terms and conditions of the contract in good faith, and at all times dealt fairly with Defendant.

58. On or about January 17, 2005, Defendant breached the contract it entered into with Plaintiff by:

    (a) Non-reappointing Plaintiff to a second 3-year term of employment when Plaintiff successfully performed her responsibilities and duties as an Assistant Professor, and,

    (b) By its failure to perform the contract in utmost good faith and to deal

fairly with Defendant in the evaluation of her job performance as a faculty member.

59. As a direct result of Defendant's breaches of contract as aforesaid, Plaintiff's employment by Defendant will be terminated on May 31, 2006, and Plaintiff will suffer economic loss of her faculty position, all to her damage in an amount in excess of Ten Thousand Dollars ($10,000.00).

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

(1) For actual damages in a sum in excess of $10,000.00, and in accordance with the proof at the time of trial;

(2) For interest thereon;

(3) For her costs; and,

(4) For such other and further relief as the Court deems just and proper.

> WARD & GLASS, L.L.P.
>
> s/Stanley M. Ward
> Stanley M. Ward, OBA# 9351
> Woodrow K. Glass, OBA#15690
> Scott F. Brockman, OBA#19416
> One Corporate Center, Suite 350
> 2600 John Saxon Blvd.
> Norman, Oklahoma   73071
> (405) 360-9700   (405) 360-7902 (fax)
>     - and -
> A. Craig Tomlin, OBA#17497
> 116 E. Sheridan, Suite 207
> Oklahoma City, Oklahoma 73104
> (405) 272-3003   (405) 605-8381 (fax)
> ATTORNEYS FOR PLAINTIFF

***ATTORNEYS' LIEN CLAIMED***
***JURY TRIAL DEMANDED***