IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

SUSANNE WEINBERGER, Ph.D.,        )
                                  )
                    Plaintiff,    )
                                  )
v.                                )        No. CIV-06-67-C
                                  )
STATE OF OKLAHOMA, ex rel.,       )
THE BOARD OF REGENTS OF           )
OKLAHOMA AGRICULTURAL AND         )
MECHANICAL COLLEGES, a            )
constitutional state agency,      )
                                  )
                    Defendant.    )

## MEMORANDUM OPINION & ORDER

Defendant State of Oklahoma, ex rel. the Board of Regents of Oklahoma Agricultural and

Mechanical Colleges ("OSU"), has moved for summary judgment on Plaintiff's Title VII and

state law claims.  Response, reply, and surreply briefs are before the Court.  For the reasons

explained below, Defendant's motion is granted in part and denied in part.

### STANDARD OF REVIEW

Summary judgment is proper only if the moving party shows "there is no genuine issue

as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(c).  "An issue of fact is 'material' if under the substantive law it is essential

to the proper disposition of the claim."  Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th

Cir. 1998).  "An issue is 'genuine' if there is sufficient evidence on each side so that a rational

trier of fact could resolve the issue either way."  Id.

If the movant carries the initial burden of demonstrating the absence of material fact

requiring judgment as a matter of law, the nonmovant must then set forth "specific facts" outside

the pleadings and admissible into evidence which could convince a rational trier of fact to find

for the nonmovant.  Fed. R. Civ. P. 56(e).  These specific facts may be shown "by any of the

kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves."

Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Such evidentiary materials include

affidavits, deposition transcripts, or specific exhibits.  Thomas v. Wichita Coca-Cola Bottling

Co., 968 F.2d 1022, 1024 (10th Cir. 1992).  "The burden is not an onerous one for the

nonmoving party in each case, but does not at any point shift from the nonmovant to the district

court."  Adler, 144 F.3d at 672.

At the summary judgment stage, the Court's function is not to weigh the evidence but to

determine whether there is a genuine issue for trial.  Willis v. Midland Risk Ins. Co., 42 F.3d

607, 611 (10th Cir. 1994).  Thus, the Court views the evidence in the light most favorable to the

nonmoving party and draws all reasonable inferences in that party's favor.  See Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); McWilliams v. Jefferson County, 463 F.3d. 1113,

1116 (10th Cir. 2006); Simms v. Oklahoma ex rel. Dep't of Mental Health, 165 F.3d 1321, 1326

(10th Cir. 1999).

## BACKGROUND[1]

OSU hired Susanne Weinberger in 2002 as an Assistant Professor in the Department of Sociology, one of the 24 departments within the College of Arts and Sciences. This tenure-track appointment extended from September 1, 2002, until May 31, 2006. At the same time Plaintiff was hired, OSU also hired Dr. Stephen Perkins as an Assistant Professor in the Department of Sociology. Both Plaintiff and Perkins are anthropologists. Plaintiff's interest and expertise is in archaeology, with a specialty in European pre-history. Plaintiff is an Austrian-born woman. Perkins, apparently, is an American male.

OSU's written policy is to formally review tenure-track Assistant Professors for a possible second appointment period during the third year of their initial appointment. Based on

---

[1] In its Reply, Defendant objects to two affidavits and a series of e-mails Plaintiff attaches to her Response as containing "hearsay, unsupported conclusions, speculation and personal opinions." (Dkt. No. 45, Def.'s Reply at 6.) Defendant argues that portions of these exhibits are not suitable for consideration at summary judgment under Federal Rule of Civil Procedure 56(e). That rule provides, in part: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." See also Fed. R. Evid. 701 (regarding lay opinion testimony). Plaintiff, as instructed by the Court, has responded to these evidentiary challenges in a Surreply.

After reviewing these exhibits and considering the parties' arguments, the Court finds that Defendant's contentions are without merit or inapplicable because the substantive decisions reached herein are not based on those particular pieces of evidence. Thus, Defendant's objections are overruled. With respect to the affidavits of Cynthia and John Dobson (Pl.'s Exs. 21 & 22), it is clear that the challenged portions are based on personal knowledge, observation, and experience and are not bald, unsupported conclusions. To the extent that they are based on comments made by OSU personnel, such statements are not hearsay under Federal Rule of Evidence 801(c) or (d)(2). With respect to Plaintiff's correspondence with her former Department Head, to the extent that such evidence is considered, the Court accepts Plaintiff's assurance that the statements expressed are not offered for the truth of the matter but to show that Plaintiff initially believed that she was on track for reappointment.

a Department tenure and promotion policy, dated September 2000: "An Assistant Professor shall be reappointed only if he/she has the potential to be promoted at the second reappointment and only if the confidence in that potential seems significantly stronger than at the initial appointment." (Def.'s Ex. A4 at 1 (quoting policy).) Plaintiff and Perkins were both reviewed for reappointment at the same time. Perkins was reappointed; Plaintiff was not.

The reappointment process begins in the fall semester of the reappointment review (academic) year with the assembling of a formal reappointment packet containing all the documents relevant to the review process. A personnel committee of the academic unit in which the faculty member is employed (e.g., the Sociology Department) reviews the reappointment packet and makes an advisory recommendation to the Department Head. If the personnel committee makes a negative recommendation, the faculty member has the right to submit a rebuttal statement. These materials are then submitted to the Department Head for an independent evaluation. After the Department Head makes a recommendation, all of the foregoing is automatically routed to a College-level personnel committee for its review, and that committee then makes an advisory recommendation to the Dean of the College. The Dean makes his or her recommendation, which is submitted to the System Senior Vice President/Provost of OSU. The Provost may, and often does when there is a disagreement among the reviewing officials, refer the matter to the Faculty Committee of the Faculty Council. The Provost then reviews the Faculty Committee's decision and the other recommendations and materials and determines whether to offer a second appointment. OSU policies provide for an elaborate appeal process when a second appointment is denied.

The reappointment process began for Plaintiff in the fall of 2004.  A reappointment packet was completed, although certain information or materials were apparently omitted.  The Personnel Committee of the Department of Sociology reviewed the packet and voted four to one to recommend non-reappointment.  The majority opinion cited the "absence of scholarly productivity, lack of involvement in professional organizations, and a pattern of poor teaching evaluations" in support of its recommendation.  (Def.'s Ex. A1 at 1.)  Two of the professors voting with the majority, Dr. Thomas E. Shriver and Dr. John Cross, had complained about Plaintiff breast-feeding her daughter at work.   Dr. Cynthia Dobson, who voted for reappointment, explains that:  Plaintiff submitted several chapters of the book she was working on; the number of chapters submitted was more than the number of articles Perkins identified in his reappointment package; there were indications that Plaintiff was making progress on her book and that it would be submitted to the publisher before Plaintiff would be up for tenure; the committee voted not to seek clarification from Plaintiff regarding the number of chapters written; and committee members reacted very negatively when Dobson mentioned that Plaintiff had suffered a miscarriage and required surgery that had affected her employment with OSU.  (Pl.'s Ex. 21.)  Shriver, the committee chair, also apparently  communicated with the Sociology Department Head, Dr. Patricia Bell, regarding Plaintiff's application while the application was pending before the committee.  (Id. at ¶ 9.)

In response to the Department Personnel Committee's recommendation, Plaintiff submitted a rebuttal letter dated January 19, 2005.  She identified a handbook entry she had written and that had been accepted for publication and explained that, in addition to numerous

illustrations, she had completed three of the nine chapters of her book, which was under contract with the Austrian Academy of Sciences.  Plaintiff also explained that, in her specialty, authorship of a book was commonplace and the prior Department Head, Dr. Charles Edgley, had supported this choice.  Furthermore, Plaintiff noted that many professional conferences in her field are by invitation only and that she was beginning to get such invitations.  Plaintiff also objected to criticism of her teaching methods and effectiveness and noted that in light of personal, pregnancy-related difficulties from 2002 through 2004, "[m]any institutions would have simply stopped [her] tenure clock in such extraordinary circumstances."  (Def.'s Ex. A2 at 3.)

Dr. Bell, as Department Head, however, recommended that Plaintiff not be reappointed. Like the Department Personnel Committee, Bell identified deficiencies in both Plaintiff's teaching and scholarship.  (Def.'s Ex. A3.)  Bell also included other criticisms of Plaintiff in her review and dismissed the perceived implication that Plaintiff's status as a parent should excuse her from professional responsibilities and duties, stating "the Department cannot be held responsible for personal reproductive decisions."  (Id. at 3.)  Plaintiff contends that since becoming the Department Head in the summer of 2004, Bell treated her unfairly.  Specifically, with respect to the sex discrimination claim, Plaintiff has produced evidence that:  Bell resisted Plaintiff's effort to move from 3/4 time to full time although Perkins had been full-time since his hiring and Plaintiff had been promised full time status when funds became available; Bell told Plaintiff that she was in the Department "additionally" and would have to make a very good case for continued employment but made no such statements to Perkins; Bell named Perkins as the "anthropology coordinator" and communicated exclusively with him on anthropology-related

topics; Bell gave credit to Perkins for the creation of a new degree; Bell suggested that Plaintiff discontinue her work and assist Perkins in his research; Bell told Plaintiff that she could not use her office as a day care but a male colleague subsequently brought his young child to work without comment; and Bell complained about Plaintiff breast-feeding her daughter while at work although there was no policy against it.[2]  (Pl.'s Ex. 6.)  Bell also discounted Plaintiff's Austrian publisher, although there is evidence that it is "highly prestigious" (Pl.'s Ex. 22 ¶ 5). Plaintiff is the only professor Bell has ever not recommended for reappointment.  (Pl.'s Ex. 5 at 53.)

At the next level of review, the Arts and Sciences Reappointment, Promotion, and Tenure Committee ("RPT Committee") voted five to four in favor of reappointment.  (Def.'s Ex. A4.) It "took issue" with the characterization of Plaintiff's teaching record and expressed concern with the change in tenor following the change in Department Heads.

Dr. Peter Sherwood, Dean of the College, nevertheless recommended that Plaintiff not be reappointed.  He expressed concern about her level of scholastic accomplishment and noted the clear recommendation from the Department that she not be reappointed.  (Def.'s Ex. 5 at 2.) Sherwood became the Dean in July 2004.  (Def.'s Ex. A ¶ 1.) Sherwood's predecessor, Dr. John Dobson, has explained that in his four years in that position, no Assistant Professor in the College was denied reappointment, denial would be "an incredibly unusual thing to happen," that the reappointment "procedure was meant to be a 'wake up call' for professors in their third year," and that his decision never differed from the recommendation of the RTC Committee.  (Pl.'s Ex. 22.)  In addition, Dobson explains that it would not be unusual for it to take five years to write

---

[2] In a report issued after the non-reappointment decision was announced, Bell also identified a grant given to Perkins but not a grant given to Plaintiff.  (Pl.'s Ex. 6.)

and have a book published "and therefore it is very likely that a professor will not have anything completed, accepted or published at the time of reappointment." (Id. ¶ 2.)

Following Sherwood's recommendation, the Faculty Committee considered the matter and voted to deny reappointment on a five to zero vote. The Provost, Dr. Marlene I. Strathe, subsequently notified Plaintiff of *her* decision of non-reappointment by letter dated May 20, 2005. (Def.'s Exs. A6 & A7.)

Plaintiff apparently questioned the Provost's decision, which resulted in a detailed response from Strathe in support of the non-reappointment decision. (Def.'s Ex. A7.) Plaintiff then filed a dispute resolution petition with the "Committee of Three." (See Def.'s Ex. A8.) The committee focused its review on whether reappointment was denied without "fair and adequate consideration." (Id. at 1.) It concluded that "the main factor" in Plaintiff's non-reappointment was the lack of significant progress on her manuscript and that this rationale was consistent with applicable guidelines. (Id. at 3.) However, two of the committee members privately expressed concern about whether Plaintiff was treated fairly, and one stated that he believed she should be reappointed. (Pl.'s Ex. 6 at 57-58.) The President of OSU, Dr. David J. Schmidly, informed Plaintiff in a writing dated September 27, 2005, that the non-reappointment decision would stand. (Def.'s Ex. A10.)

Plaintiff continued in her position as Assistant Professor until approximately June 2006. By that date, Plaintiff had finished a draft of her book, which at the time only required additional proofreading. (Pl.'s Ex. 6 at 49.)

## DISCUSSION

Defendant makes several arguments in support of summary judgment.  First, Defendant contends that there is no evidence of discrimination against Plaintiff based on gender or national origin and that the decision not to reappoint her was made after an extensive review process identified legitimate, non-discriminatory reasons for her non-reappointment.  Second, Defendant argues that there is no evidence that Plaintiff was retaliated against for filing an internal grievance or making complaints to the Equal Employment Opportunity Commission ("EEOC").  Third, Defendant argues that Plaintiff's Title VII claims are time-barred.  Fourth, Defendant claims that the Eleventh Amendment bars Plaintiff's breach of contract claim and, furthermore, there is no evidence supporting such a breach.  Defendant also requests that, in the alternative, the Court decline to exercise supplemental jurisdiction over any state law claim.  These arguments are addressed in turn.

### A.     *Title VII Discrimination Claims*

Plaintiff asserts claims under Title VII for sex discrimination and national origin discrimination.  Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual . . . or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  To prove either of her Title VII claims, Plaintiff must establish that Defendant intentionally discriminated against her because of her sex or because of her national origin.  Mickelson v. N.Y. Life Ins. Co., 460 F.3d 1304, 1312 (10th Cir. 2006); Munoz v. St. Mary-Corwin Hosp., 221

F.3d 1160, 1167 (10th Cir. 2000).  Plaintiff contends that the discriminatory animus of members of the Personnel Committee and Bell resulted in negative recommendations, based on unsubstantiated or distorted criticisms, that doomed her chances for reappointment.

Because Plaintiff relies on circumstantial evidence of discrimination, the three-step burden-shifting framework set forth in McDonnell Douglas and its progeny applies.  Mickelson, 460 F.3d at 1311.  Plaintiff must first establish a prima facie case of discrimination.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Plaintiff may satisfy this burden by presenting a scenario which on its face suggests that Defendant more likely than not discriminated against her.  See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981); Hysten v. Burlington N. & Santa Fe Ry. Co., 296 F.3d 1177, 1181 (10th Cir. 2002). Ordinarily, the prima facie showing requires "'that (1) the plaintiff belongs to some protected class, (2) the plaintiff was qualified for the position or benefit at issue, (3) the plaintiff suffered an adverse employment action, and (4) the plaintiff was treated less favorably than others (e.g., the position at issue remained open after the adverse employment action).'"  Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1201 (10th Cir. 2006) (citation omitted).

If Plaintiff makes such a showing, the burden of production shifts to Defendant to state a "legitimate, nondiscriminatory reason" for the adverse employment action.  Mickelson, 460 F.3d at 1311.  If Defendant identifies such a reason, "'then summary judgment is warranted unless [Plaintiff] can show there is a genuine issue of material fact as to whether the proffered reasons are pretextual.'"  Id. (citation omitted).  Pretext may be shown with evidence of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's

proffered legitimate reasons for its action [such] that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997) (citations and internal quotation marks omitted).  Typically, pretext is shown in one of three ways: (1) with evidence that the reason stated was false; (2) with evidence that the defendant acted contrary to a pertinent written company policy; or (3) with evidence that defendant acted contrary to a pertinent unwritten policy or company practice. Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1230 (10th Cir. 2000).  Thus, the following may be relevant to a pretext inquiry:  prior treatment of the plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities; and the use of subjective criteria.  Jaramillo v. Colo. Judicial Dep't, 427 F.3d 1303, 1308 (10th Cir. 2005). However, the relevant issue is not whether the stated reasons for termination were "wise, fair or correct, but whether [the defendant] honestly believed those reasons and acted in good faith upon those beliefs."  Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1318 (10th Cir. 1999), implicitly overruled on other grounds, Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002).  In examining this issue, a court must "look at the facts as they appear to the person making the decision to terminate [the] plaintiff." Kendrick, 220 F.3d at 1231.

Although Defendant generally discounts the evidence supporting Plaintiff's claims, it does not specifically challenge Plaintiff's prima facie case.  The Court finds that there is sufficient evidence to support Plaintiff's prima facie case of both sex and national origin discrimination, especially absent explicit argument by Defendant to the contrary.  Plaintiff is a

woman and Austrian-born.  There is evidence that Plaintiff not only performed her job satisfactorily but also that her tenure potential was such that she should have been reappointed. In her summary judgment response, Plaintiff identifies a single adverse employment action–her non-reappointment.  And, although it is not clear whether another anthropology professor was subsequently hired to replace her, there is evidence that she was treated less favorably than her similarly situated, male and American, counterpart in the reappointment process.

Defendant, in turn, has satisfied its burden of stating legitimate and non-discriminatory reasons for Plaintiff's non-reappointment:  her teaching and writing inadequacies.  (Def.'s Br. at 13.)  However, the Court finds that Plaintiff has identified evidence indicating that those reasons were pretextual.  With respect to teaching performance, others within the review process took issue with and disagreed that her evaluations suggested such a negative assessment of her abilities.  With respect to her scholarly productivity, there is evidence both that Plaintiff's choice to write a book rather than articles was sanctioned by OSU policies as well as by the former Department Head and that the failure to have it already published was not objectively unreasonable.  The evidence, construed in Plaintiff's favor, indicates that the Personnel Committee and the Department Head played a critical role in the reappointment process and the ultimate decision to take the extraordinary action of not reappointing Plaintiff.  They, implicitly or explicitly, discounted her agreement with an Austrian publisher, and the comments of some individuals, namely Bell, and the prior actions of her and certain members of the committee could be construed as evidencing a sex-based bias against Plaintiff.  Although Plaintiff and her similarly-situated male and American colleague chose to pursue different types of publications,

a jury could reasonably find, based on all the evidence presented, that the review of her scholarly efforts was unfair/inequitable in context.  Therefore, Defendant's request for summary judgment on Plaintiff's Title VII claims is denied.[3]

### B.    *Title VII Retaliation Claims*

As previously stated, Defendant contends that there is no evidence that it retaliated against Plaintiff after she filed a dispute resolution petition or an EEOC complaint.  Plaintiff fails to respond to this argument or identify any retaliation in her response.  Thus, the Court views the retaliation claims as conceded and grants summary judgement on them in Defendant's favor.

---

[3] Plaintiff asserts only sex discrimination and national origin discrimination.  However, at times, her argument suggests that she also intends to make a pregnancy-related or parental status discrimination claim.  (See, e.g., Dkt. No. 53, Pl.'s Surreply at 10.)  The Pregnancy Discrimination Act amended Title VII to specify:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work. . . .

42 U.S.C. § 2000e(k).

However, courts have held that claims based on employer's breast-feeding restrictions are not per se actionable under Title VII.  See Fejes v. Gilpin Ventures, Inc., 960 F. Supp. 1487, 1491 (D. Colo. 1997).  Thus, to the extent Plaintiff would want to make such a claim, she may not.  That is not to say that evidence that Plaintiff's having her child at work and breast-feeding was deemed unacceptable is not relevant.  It may suggest animus, especially when restrictions were not placed on male faculty who brought small children to work.

#### C.      Exhaustion

Defendant suggests that Plaintiff had 300 days after the alleged discrimination to file a charge with the EEOC and that "Plaintiff cannot claim she was discriminated against based on an alleged lack of a promotion, allegations concerning child care (including breast feeding), travel allegations, and alleged entitlement to full-time status before September 1, 2004" because she failed to include those as grounds for discrimination in a timely EEOC charge. (Def.'s Br. at 20.)  Notwithstanding other allegations contained in the Amended Complaint, Plaintiff has clarified that her Title VII claims are based on her non-reappointment.  Thus, Defendant's argument applies only if by "lack of a promotion" it means to challenge Plaintiff's non-reappointment/termination-based claims.  The Court will assume that was in fact Defendant's intent.  Even so, such a position is untenable.

In Title VII cases, exhaustion of administrative remedies before the EEOC is a jurisdictional prerequisite to suit.  <u>Jones v. Runyon</u>, 91 F.3d 1398, 1399 (10th Cir. 1996). Exhaustion requires not only a timely charge but also that the charge be "'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'"  <u>Foster v. Ruhrpumpen, Inc.</u>, 365 F.3d 1191, 1195 (10th Cir. 2004) (<u>quoting</u> 29 C.F.R. § 1601.12(b) (court's emphasis removed)).  "A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC."  <u>MacKenzie v. City & County of Denver</u>, 414 F.3d 1266, 1274 (10th Cir. 2005).

Plaintiff filed her EEOC charge, complaining of discrimination and retaliation on the basis of her race, sex, national origin, and age, on October 18, 2005. (Def.'s Ex. E.)  She also completed a "harassment questionnaire," a "general intake questionnaire," and a "terms and conditions questionnaire" on September 23, 2005. (Pl.'s Exs. 18 & 24).  All of these documents were filed within 300 days of the Provost's letter, dated May 20, 2005, announcing the decision not to reappoint Plaintiff.

In the charge, Plaintiff clearly claimed that she had been subjected to gender and national origin discrimination between October 5, 2004 and September 9, 2005.  The reappointment process and the Provost's decision occurred during that time period.  In the charge, Plaintiff also refers to her dispute resolution request, which apparently was generated in response to the non-reappointment decision. (See Def.'s Ex. A8 (responding to dispute resolution petition).)  In addition, Plaintiff specifically referred to her non-reappointment/termination in the verified intake questionnaire and in an addendum to the harassment questionnaire.  Thus, in context, the questionnaire responses show that Plaintiff intended to assert a discrimination claim based on her non-reappointment and the content of the charge is consistent with such claims and not evidence of abandonment.  Cf. Welsh v. City of Shawnee,  No. 98-6243, 1999 WL 345597 (10th Cir. June 1, 1999) (discussing when questionnaire might expand allegations contained in the EEOC charge).[4]

Furthermore, Defendant has not complained that, due to broad references in the charge, it was unaware that Plaintiff intended to challenge her non-reappointment on the grounds of sex

---

[4] Unpublished decision cited in accordance with 10th Cir. R. 36.3.

and national origin discrimination or that the EEOC was unable to investigate those claims.  See

Foster, 365 F.3d at 1195 (explaining that the filing requirement "is intended to protect employers

by giving them notice of the discrimination claims being brought against them, in addition to

providing the EEOC with an opportunity to conciliate the claims").  Under these circumstances,

the Court finds that Plaintiff's charge was timely and gave adequate notice of the claims

advanced in this case.  Therefore, the record indicates that Plaintiff exhausted her administrative

remedies and that jurisdiction is proper.

### D.      *Breach of Contract Claim*

In addition, Defendant contends that Plaintiff's breach of contract claim is flawed in

numerous respects and, specifically, that it cannot be asserted in this case because of Defendant's

Eleventh Amendment immunity.  In response, Plaintiff requests that the breach of contract claim

be dismissed without prejudice or, alternatively, that the Court find a question of fact exists

precluding summary judgment.

The Eleventh Amendment to the United States Constitution provides:  "The Judicial

power of the United States shall not be construed to extend to any suit in law or equity,

commenced or prosecuted against one of the United States by Citizens of another State, or by

Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  "'Even though the clear

language does not so provide, the Eleventh Amendment has been interpreted to bar a suit by a

citizen against the citizen's own State in Federal Court.'"  Johns v. Stewart, 57 F.3d 1544, 1552

(10th Cir. 1995) (citation omitted).  Thus, state colleges and universities, like Defendant, are

entitled to Eleventh Amendment immunity from suit in federal court absent waiver or a valid

abrogation by Congress.  <u>Crumpacker v. Kan. Dep't of Human Res.</u>, 338 F.3d 1163, 1169 (10th Cir. 2003); <u>Mescalero Apache Tribe v. N.M.</u>, 131 F.3d 1379, 1384 & 1385 n.4 (10th Cir. 1997); <u>Univ. of Tex. at Austin v. Vratil</u>, 96 F.3d 1337, 1340 (10th Cir. 1996).  Plaintiff makes no argument that Defendant has waived its immunity with respect to this state law claim.  Thus, Plaintiff's breach of contract claim is dismissed without prejudice.[5]

## CONCLUSION

Defendant's Motion for Summary Judgment (Dkt. No. 36) is GRANTED in part and DENIED in part.  Plaintiff's breach of contract claim is DISMISSED without prejudice.  Summary judgment is GRANTED in Defendant's favor on Plaintiff's retaliation claims (claims three and four in the Amended Complaint (Dkt. No. 27)).  Plaintiff's Title VII claims for sex and national origin discrimination based on her non-reappointment remain for trial.  Judgment will issue at the conclusion of these proceedings.

IT IS SO ORDERED this 22nd of February, 2007.

ROBIN J. CAUTHRON
United States District Judge

---

[5]  In contrast, the Eleventh Amendment does not bar Title VII claims against Defendant because Congress abrogated the States' Eleventh Amendment immunity for Title VII claims. <u>Fitzpatrick v. Bitzer</u>, 427 U.S. 445, 449 n.2 (1976); <u>Mascheroni v. Bd. of Regents of Univ. of Calif.</u>, 28 F.3d 1554, 1560 n.6 (10th Cir. 1994), <u>abrogated on other grounds by</u> <u>Morgan</u>, 536 U.S. at 2074 n.11.